UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

BRANDON STEINER,

                     Plaintiff,

         -v-

ANBROOK INDUSTRIES, LTD., METRO
ROOFING SUPPLIES, INC., SRS
DISTRIBUTION INC., and HEMALA
ENTERPRISES, INC.,

                     Defendants.

------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>April 4, 2018</u>

17-cv-5187 (KBF)

<u>OPINION & ORDER</u>

KATHERINE B. FORREST, District Judge:

In 2002, plaintiff Brandon Steiner began to install red cedar shingles on his home. By at least 2012, he was aware that the shingles had begun to rot. Five years later, in 2017, he filed this diversity case, seeking damages. He has sued several defendants: Anbrook Industries, Ltd. ("Anbrook"), the alleged shingle manufacturer, Metro Roofing Supplies, Inc. ("Metro"), the shingle provider, SRS Distribution Inc., Metro's parent company,[1] Hemala Enterprises, Inc. ("Hemala"), the contractor who installed the shingles, and Markel International Insurance Company, Ltd f/k/a Terra Nova Insurance Co. ("Markel"), Hemala's insurance carrier.

Plaintiff's Amended Complaint brings several causes of action. First, he brings a breach of contract claim against Hemala. Second, he brings a negligence

---

[1] Defendant SRS was voluntarily dismissed from the case without prejudice on March 7, 2018. (ECF No. 102.)

claim against both Hemala and Metro. Third, he brings a breach of warranty claim against Anbrook. Fourth and fifth, he brings design and manufacturing defect claims against Anbrook. Sixth, he brings an additional breach of contract claim against Markel.

Defendants Anbrook and Metro have moved for summary judgment; defendant Markel has moved to dismiss.

For the reasons set forth below, the Court GRANTS all three motions.

## I. FACTUAL BACKGROUND

The following facts are materially undisputed and all inferences are drawn in favor of the plaintiff. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

Plaintiff owns a home in Scarsdale, New York, on which he installed red cedar shingles, beginning in 2002. The shingles were allegedly manufactured by Anbrook,[2] sold by Metro, and installed by Hemala. By at least June 2012, plaintiff became aware of rot and degradation of the shingles. (ECF No. 86-1, Pl.'s Counterstatement of Facts ("Pl.'s Counterstatement") ¶ 11.) In June 2012, Martin Freebern, plaintiff's contractor, assembled Radim Hemala (the contractor), and Jason Salvino (of Metro) to inspect the roof. (<u>Id.</u> ¶¶ 12–13.)

Nearly two years later, on May 21, 2014, Freebern sent an email to Brooke Meeker, Anbrook's president, complaining that the roof had experienced "excessive wear and . . . rot." (<u>Id.</u> ¶ 4.) He went on to reference the June 2012 meeting, stating

---

[2] Anbrook does not concede that it manufactured the shingles, arguing that the only evidence offered to date is a "manufacturing tag that could be easily obtained from a construction yard or distributor that sells Anbrook products."

that: "At that time we collectively agreed the installation and ventilation were performed adequately and that the roof was in poor repair." (Id.)

A. Additional Communication with Anbrook

Freebern emailed Anbrook again on May 30, 2014, stating that the entire roof had been power washed and stained in 2011. (ECF No. 56-11, Meeker Decl. ¶ 6.) Nearly three years later, on January 25, 2017, Meeker received an email from Edward Schauder, Steiner's associate and representative for these purposes, asking her to explore an "amicable resolution" to the shingle issue and informing her that they were likely to instigate litigation if such resolution could not be reached. (Id. ¶ 13.) Anbrook and Schauder entered into negotiations shortly thereafter, where Anbrook offered to replace the cedar shingles at "cost." (Id. ¶ 15.) A quote was forwarded to Schauder (by Salvino). Until litigation in this matter commenced on July 10, 2017, Meeker believed that the parties had reached resolution. (Id. ¶ 18.)

B. Additional Communication with Metro

There was no further communication with Metro about the shingles for several years after the 2012 site meeting. In September 2016, however, Freebern begin soliciting bids for labor and materials to replace the roof. (ECF No. 86-1, Pl.'s Statement of Additional Material Facts ("PSAMF") ¶ 19. Schauder claims that in January 2017 Salvino told him that "over the prior five years, many people in the Northeastern region of the United States had reported problems similar to those Steiner was experiencing," and that "Metro's Northeast regional representative had been dealing with many such complaints." (ECF No. 85-3, Schauder Cert. ¶ 4.) For

his part, Salvino claims have told Schauder simply that he had been recently "informed by the Northeast Representative of the Cedar Bureau that the Cedar Bureau had been getting complaints about certain cedar shingles installed in the manner in which they were installed in the Steiner property." (ECF No. 94-1, Salvino Decl. ¶ 9.) Salvino emphasized in his declaration, however, that he was neither a contractor nor an expert in roofing; rather, he was a salesman who proffered a possible opinion based on information given to him by the Cedar Bureau significantly <u>after</u> the sale of the shingling or the 2012 inspection. (<u>Id.</u> ¶ 10–14.)

C. <u>Anbrook's Warranty</u>

Anbrook's Limited Warranty contains a Warranty Registration Provision which provides, in relevant part, that the owner must complete and return the Warranty Registration Form included with any Anbrook products purchased by the customer. (<u>Id.</u> ¶ 19.) Anbrook has no record of any warranty ever being registered under Steiner's name; Steiner further admits that he never registered the warranty. (ECF No. 85-1, Pl.'s Counterstatement of Material Facts 2 ("Pl.'s Counterstatement 2") ¶¶ 13–14.)

The Limited Warranty furthermore contains two relevant explicit exclusions: 1) it states that "roofs subject to power washing in any capacity will nullify this warranty;" and 2) it states that "application of any after market products to the roof, at any time, will nullify this warranty in its entirety." (<u>Id.</u> ¶ 11.)[3]

---

[3] Plaintiff argues that there is a material question of fact as to whether the 2017 warranty and 2002 warranty include the same provisions; Anbrook's President has testified that the relevant portions are identical.

D. Insurance Coverage

The factual allegations discussed below are drawn from the Amended Complaint (ECF No. 32, Am. Compl.) and assumed true for the purposes of Markel's motion to dismiss.

Markel is an insurance company headquartered in Virginia, with an office in New York. Markel was previously known as "Terra Nova Insurance Company." (Id. ¶ 66.) Hemala provided Steiner with a Certificate of Liability Insurance from Terra Nova for the period of November 9, 2001–November 9, 2002. (Id. ¶ 65.) Markel has been unable to locate any insurance policy identified by Hemala. (Id. ¶ 13.)

Hemala was dissolved in 2012; plaintiff claims that he is a third-party beneficiary of an insurance policy between Terra Nova and Hemala and that Markel's refusal to cover claims stemming from such policy constitute a breach of the underlying insurance policy.

II. LEGAL PRINCIPLES

A. Summary Judgment Standard

This Court applies the well-known summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure. Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not

bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322–23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citing LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005)). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks, citations, and alterations omitted).

B. Motion to Dismiss Standard

On a motion to dismiss, this Court accepts as true all well-pleaded factual allegations. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009). This means that the Court must accept plaintiff's factual allegations in his complaint as true and draw all reasonable inferences in plaintiff's favor. See Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 108 (2d Cir. 2010). To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

6

to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

When ruling on a motion to dismiss under 12(b)(6), a district court errs if it

relies on additional materials not included in the pleadings or relies on "factual

allegations contained in legal briefs or memoranda." Friedl v. City of New York,

210 F.3d 79, 83–84 (2d Cir. 2000).

C.  Statutes of Limitations

Both negligence and products liability claims are subject to a three-year

statute of limitations under New York laws. N.Y.C.P.L.R. § 214(4)-(5). "[I]n any

action to recover damages for negligence[,] . . . the plaintiff's claim accrues upon the

date of injury." Brooklyn Union Gas Co. v. Hunter Turbo Corp., 241 A.D.2d 505,

506 (N.Y. App. Div. 1997). This is true "even if the plaintiff is unaware that he or

she has a cause of action" at the time of injury. Woodlaurel, Inc. v. Wittman, 199

A.D.2d 497, 498 (N.Y. App. Div. 1993). "The rationale is that the injury puts the

putative plaintiff on inquiry notice, and therefore, charges him or her with

responsibility for investigating, within the limitations period, all potential claims

and all potential defendants." Zimmerman v. Poly Prep Country Day Sch., 888 F.

Supp. 2d 317, 337 (E.D.N.Y. 2012) (internal quotation marks and citations omitted).

The statute of limitations for a breach of a warranty cause of action is four

years from the time the cause of action accrues. N.Y. U.C.C. § 2-275; Heller v. U.S.

Suzuki Motor Corp., 477 N.E.2d 434 (N.Y. 1985).

To avoid dismissal of his action as untimely, plaintiff asserts equitable tolling. "Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (internal quotation marks and citations omitted). Generally, "mere silence or failure to disclose the wrongdoing is insufficient" to support an estoppel. Zoe G. v. Frederick F.G., 208 A.D.2d 675, 675–76 (N.Y. App. Div. 1993); see also Smith v. Smith, 830 F.2d 11, 1213 (2d Cir. 1987). However, where plaintiff can establish a fiduciary duty, a mere omission may support equitable estoppel. John Doe v. Holy See, 17 A.D.3d 793 (N.Y. App. Div. 2005). Even where such a duty is established however, the party seeking equitable estoppel must further show that it was wrongfully induced not to bring suit. Id.

In general, equitable tolling is meant to provide a remedy when a plaintiff is "prevented in some extraordinary way from exercising his rights." Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 24 (2d Cir. 1985).

D. Fraudulent Misrepresentation, Fraudulent Concealment, or Negligent Misrepresentation

A cause of action for fraudulent misrepresentation under New York law includes the following elements: 1) the defendant made a material false representation; 2) the defendant intended to defraud the plaintiff thereby; 3) the plaintiff reasonably relied upon the representation; and 4) the plaintiff suffered damage as a result of such reliance. Indep. Order of Foresters v. Donald, Lufkin, &

8

Jenrette, Inc., 157 F.3d 933 (2d Cir. 1998). Under Rule 9(b), a plaintiff alleging fraud must further: 1) detail the statements (or omissions) that the plaintiff contends are fraudulent; 2) identify the speaker; 3) state where and when the statements (or omissions) were made; and 4) explain why the statements (or omissions) are fraudulent. Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004). A plaintiff must further allege facts giving "strong rise to an inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290–91 (2d Cir. 2006).

A cause of action for fraudulent concealment under New York law includes five elements: 1) a relationship between the contracting parties that creates a duty to disclose; 2) knowledge of the material facts by the party bound to disclose; 3) scienter; 4) reliance; and 5) damage. Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 582 (2d Cir. 2005). "A duty to disclose arises in one of three circumstances; where the parties are in a fiduciary relationship; under the special facts doctrine, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge, or where a party has made a partial or ambiguous statement, whose full meaning will only be made clear after complete disclosure." Id. (internal quotation marks and citations omitted). A fraudulent concealment claim must also meet the stringent pleading standard of Rule 9(b).

A cause of action for negligent misrepresentation under New York law includes the following elements: 1) the defendant had a duty, as a result of a special

9

relationship, to give correct information; 2) the defendant made a false representation that he or she should have known was incorrect; 3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; 4) the plaintiff intended to rely and act upon it; and 5) the plaintiff reasonably relied on it to his or her detriment.  Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000).

    E.  Standing

    Under New York law, an injured party lacks standing to sue the insurer of a tort feasor.  Lang v. Hanover Ins. Co., 820 N.E.2d 855, 857 (N.Y. 2004).  However, New York has enacted a direct action statute which allows a direct cause of action where an injured party has first obtained a judgment against the insured "for damages for injury sustained or loss or damage occasioned during the life of the policy or contract."  N.Y. Ins. Law § 3420(b)(1).[4]

    F.  Breach of Contract

    To succeed on a claim for breach of contract, a plaintiff must demonstrate "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co., 375 F.3d 168, 177 (2d Cir. 2004) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).  In order to survive dismissal, the complaint must provide specific allegations as to the contract's

---

[4] Since the same result would occur if the contract were analyzed under Connecticut law, the Court need not embark on a choice-of-law analysis to find this contract's center of gravity.

parties, terms, and breached provisions.  See, e.g., <u>Royal Park Investments SA/NV</u> <u>v. HSBC Bank USA, Nat. Ass'n</u>, 109 F. Supp. 3d 587 (S.D.N.Y. 2015).

Under New York law, in order to recover as a third-party beneficiary of a contract, "a claimant must establish that the parties to the contract intended to confer a benefit on the third party." <u>Subaru Distribs. Corp. v. Subaru of Am., Inc.</u>, 425 F.3d 119, 124 (2d Cir. 2005) (internal citations omitted).  "[I]n order for a contract to confer enforceable third-party beneficiary rights, it must appear that no one other than the third party can recover if the promisor breaches the contract or the contract language should otherwise clearly evidence an intent to permit enforcement by the third party." <u>Debary v. Harrah's Operating Co.</u>, 465 F. Supp. 2d 250, 263–64 (S.D.N.Y. 2006) (internal quotations and citations omitted).

Generally, a certificate of insurance is not evidence of the terms or coverages provided by an insurance policy.  Rather, a "certificate of insurance is merely evidence of a contract for insurance." <u>First Financial Ins. Co. v. Jetco Contracting</u> <u>Corp.</u>, 2000 WL 1013945, at *6 (S.D.N.Y. July 21, 2000).

III.    DISCUSSION

In their motions for summary judgment, both Anbrook and Metro argue that the statute of limitations is fully dispositive of all claims against them.  Anbrook further argues that the breach of warranty claim must be dismissed, arguing both

that plaintiff breached the terms of the warranty and also that he failed to register it in the first instance.[5]

In response, plaintiff argues that material questions of fact remain as to whether Metro and Anbrook knew and withheld information regarding the cedar shingles from plaintiff; he therefore contends that the applicable statute of limitations should be equitably tolled.  He also maintains that material questions of fact exist as to the warranty provisions.

In Markel's motion to dismiss, it argues first that plaintiff, having failed to obtain a judgment against Hemala, lacks standing to sue, and second, that even if plaintiff does have standing, he has failed to adequately plead a breach of contract claim by failing to make specific allegations as to Hemala's alleged breach.

The Court will discuss each argument in turn.

A. <u>Negligence and Products Liability Claims</u>

Plaintiff's second, fourth, and fifth claims are against Metro and Anbrook for negligence and products liability.  Metro and Anbrook both move for summary judgment, claiming that the statutes of limitations for all three causes of action expired more than two years before plaintiff filed suit.  They are correct.

The statutes of limitations for negligence and products liability accrue as of the injury—in this case, when plaintiff first became aware that his shingles were

---

[5] Anbrook further argues that the Court is lacking in subject matter jurisdiction, since plaintiff and Anbrook were engaged in settlement negotiations in which the shingles would have been replaced for under $75,000.  The Court does not find evidence in the record that plaintiff's complaint, alleging more than $100,000 in damages, was made in bad faith, and thus rejects this argument.

damaged or rotting.  <u>Brooklyn Union Gas Co.</u>, 241 A.D.2d at 506.  Here, it is uncontested that plaintiff was aware of the damage to the shingles not later than June 2012, when Freebern, Hemala, and Salvino met to inspect the roof.  Freebern's May 21, 2014 email confirms such June 2012 meeting.  As such, the statutes of limitations expired in June 2015.  Plaintiff did not file suit, however, until July 10, 2017—more than three years after even the 2014 email; the negligence and products liability claims are therefore untimely.

Plaintiff does not contest that the statutes of limitations have expired, but argues that nevertheless, the Court should equitably toll the limitations period, contending that either Metro or Anbrook fraudulently concealed information or failed to warn him of known problems with red cedar shingles in the Northeast. The Court will discuss each defendant in turn.

1. <u>Metro</u>

Plaintiff's amended complaint alleges that "[u]pon information and belief, Metro was aware of these problems at least as early as the time that Steiner first communicated with Metro, but Metro purposefully withheld this information from Steiner, in order to forestall Steiner bringing legal action sooner."  (Am. Compl. ¶ 4.) The only evidence proffered in support of this argument is a declaration from Schauder stating that Salvino informed him in 2017 of problems with cedar shingles installed in the Northeast without using skip sheathing.  Based upon this statement alone, plaintiff argues that equitable estoppel should apply.  The Court is not persuaded.

As a first matter, plaintiff fails to plead with particularity as required under Rule 9(b) for claims of both fraudulent misrepresentation and fraudulent concealment. His allegation is simple—that Salvino knew about problems arising from the particular method of installation of similar red cedar shingles, and either: 1) was making a false misrepresentation when he agreed with Hemala that the shingles appeared to be properly installed; or 2) concealed information about widespread problems with similar red cedar shingles either during the 2012 site meeting, or in the years that followed. However, his only evidence—that Salvino mentioned to Schauder in 2017 that he had heard of similar problems does not give "strong rise to an inference of fraudulent intent." Lerner, 459 F.3d at 290–91.

Furthermore, claims of fraudulent concealment and negligent misrepresentation require a duty to disclose. Under New York law, an arms-length financial transaction does not give way to such a duty. See, e.g., Jana L. v. West 129th St. Realty Corp., 22 A.D.3d 274, 277–79 (N.Y. App. Div. 2005). Moreover, even if a fiduciary duty could be established, Salvino has testified that he was not aware of any problems in the red cedar shingles or in the method used to install them at the time that he visited plaintiff's residence in 2012. Schauder's statement does not establish a triable issue as to Salvino's (or Metro's) knowledge. Schauder states only that Salvino stated that "over the prior five years" many such problems had arisen and that "Metro had been dealing with many such complaints." (ECF No. 85-3, Schauder Cert. ¶ 4.) This is inadequate to show that Salvino was concealing knowledge five years earlier on his site visit, or that any statements by

Metro had been made that would forestall plaintiff for nearly five years from bringing litigation.

Therefore, the Court finds that the plaintiff has failed to plead any claims sounding in fraud with the particularity required; moreover, he has failed to proffer any evidence of Metro or Salvino's knowledge that they were making either misleading or fraudulent statements. On this scant showing, the Court cannot say that the plaintiff has been prevented in any "extraordinary way" from exercising his right to commence litigation. It therefore declines to invoke equitable estoppel as to defendant Metro.

### 2. Anbrook

The allegations as to Anbrook are even more speculative. Plaintiff's amended complaint states that only: 1) "Upon further information and belief, Anbrook was also aware of the problems identified by Metro, and Anbrook also chose to withhold this information from Steiner, in order to forestall Steiner bringing legal action sooner" (Am. Compl. ¶ 5); and 2) "Upon information and belief, Defendant Anbrook was aware that its cedar shingles had failed under similar circumstances, on different homes, in the past, and had neither changed its procedures or warned consumers as to the problems." (Id. ¶ 23.)

Plaintiff contends that Meeker (or another Anbrook representative) was concealing known problems with its red cedar shingles—but proffers no admissible evidence to that end. Instead, he offers only speculation that information was withheld—and points to the 2014 site meeting at which Freebern testified "as far as

15

I know, Ms. Meeker did not inform Mr. Steiner that the roof had been installed improperly or that the wrong shingle product had been used." (ECF No. 86-2, Freebern Decl. ¶ 10.)

The Court is wholly unpersuaded by these modest allegations. Putting aside that Anbrook continues to question whether its shingles were even used on plaintiff's residence—it certainly has no affirmative duty to plaintiff (to whom it was never in privity), nor can a possible omission in one site visit more than two years after plaintiff discovered his problem be said to be the type of extraordinary intervention to keep plaintiff from bringing suit that the equitable tolling doctrine was designed to remedy. Thus, the Court will not invoke the doctrine of equitable tolling.

In sum, since the statutes of limitations expired in June 2015, and because there is no compelling basis for the Court to allow equitable estoppel, plaintiff's negligence and products liability causes of action are not timely.

Accordingly, Counts Two, Four, and Five are barred and summary judgment is GRANTED to Metro and Anbrook as to these counts.

B. <u>Warranty</u>

Plaintiff's third cause of action is a breach of warranty claim as to Anbrook only. He claims that Anbrook has refused to honor its warranty. Anbrook moves for summary judgment, arguing that: 1) plaintiff breached the terms of the warranty; 2) plaintiff never registered the warranty; and 3) any breach of warranty action is barred by a four-year statute of limitations.

The essential facts are not in dispute—plaintiff had his shingles power washed and stained—both of which constitute a breach of the warranty's explicit terms. Moreover, plaintiff never registered his warranty; Anbrook therefore has no record whatsoever of any warranty registered to Steiner. The only triable question that plaintiff raises is whether the warranty terms provided by Anbrook are identical to the terms of the 2002 warranty. However, his speculation that they are not is just that—guesswork. He proffers not a shred of evidence to show that the material terms of the warranty have changed. In contrast, Meeker testified, based on personal knowledge, that the relevant portions of the warranty remain unchanged from 2002 to the present. (ECF No. 89-1, Meeker Reply Decl. ¶ 7.) Plaintiff's speculation that the relevant provisions of the warranty may have changed is not enough to raise a triable issue.

As such, the Court GRANTS summary judgment to defendant Anbrook as to the third cause of action.

C. Markel/Breach of Contract

Plaintiff's sixth cause of action is for breach of contract against Markel; he contends that he is a third-party beneficiary of an insurance policy that Hemala held with Terra Nova Insurance Company. He thus claims that he is entitled to damages based on Markel's refusal to honor the underlying insurance policy.

Markel moves to dismiss, arguing that: 1) plaintiff—without having received a judgment against Hemala—lacks standing to sue; and 2) even if plaintiff has

standing, he has failed to adequately plead his contract claim. The Court agrees with both arguments.

As a threshold matter, plaintiff, despite being directed by this Court to file for default judgment against Hemala, has taken no steps to do so.[6] Without at least an attempt to obtain such a judgment, this Court does not believe that standing exists, and plaintiff has pointed to no relevant cases that state otherwise.

Moreover, even if plaintiff could establish standing, he has failed to plead the essential aspects of a contract claim—he neither points to any specific provision of the contract that was breached, nor can he establish that he was the third-party beneficiary of such a policy. He bases the entirety of his claim on a certificate of liability insurance. This alone is not enough to adequately plead a breach of contract claim—without any indication as to what the underlying policy may have covered and/or how Markel has breached it, plaintiff's claim cannot survive dismissal.

Therefore, summary judgment is GRANTED to defendant Markel on the sixth cause of action.

---

[6] As plaintiff has made no attempts to serve Hemala, despite having commenced litigation nearly nine months ago, the Court dismisses plaintiff's claims against Hemala.

## IV.    CONCLUSION

For the reasons set forth above, the Court GRANTS summary judgment to defendants Anbrook and Metro and GRANTS Markel's motion to dismiss.  The Clerk of Court is directed to terminate the motions at ECF Nos. 47, 56, and 81, and to terminate this action.

SO ORDERED.

Dated:        New York, New York
              April 4, 2018

_____
KATHERINE B. FORREST
United States District Judge